UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID WAYNE PRICE,

                    Plaintiff,

vs.                                    Case No.   2:10-cv-578-FtM-99SPC

WILLIAM CAMERON, Sheriff and PRISON
HEALTH SERVICES, INC.,

                    Defendants.
_____/

## OPINION AND ORDER

### I.   Status

This matter comes before the Court upon review of the Motions
for Summary Judgment filed on behalf of Defendant Prison Health
Services[1] ("PHS") (Doc. #46, PHS Motion) and Defendant Cameron
(Doc. #37, Sheriff Motion).   Defendant PHS and Defendant Cameron
submit exhibits in support of their respective Motions.[2]  Plaintiff
filed a response in opposition (Doc. #44, Response) to the Motions.
This matter is ripe for review.

### a.   The Complaint

Plaintiff David Wayne Price, proceeding *pro se*, initiated this
action as a pre-trial detainee at the Charlotte County Jail by

---

[1]PHS reports that due to a corporate purchase, PHS is now known
by the name Corizon Health, Inc.  PHS Motion at 1, fn. 1.   For
continuity, Corizon Health, Inc. refers to itself as PHS, and the
Court will as well.

[2]Defendant PHS' exhibits are identified as Doc. #35-1 through
#35-2, PHS Exhs. A-B. Defendant Cameron exhibits are identified as
Doc. #37-1 through #37-3, Shrf. Exhs. A-C.

filing a Civil Rights Complaint Form (Doc. #1, Complaint) and supporting exhibits (Doc. #1-1) pursuant to 42 U.S.C. § 1983. According to the Complaint, Plaintiff has severe plaque build-up, gum recession, and bleeding caused by the alleged long-term use of a "fingertip toothbrush."[3]  See generally Complaint.  Plaintiff also alleges that he has a hernia that he has requested medical treatment for to no avail, causing him pain.  Id. at 4.  As relief, Plaintiff seeks an examination by an outside dentist, surgery on his hernia, and monetary damages.  Id.

   b.  **Defendant Cameron's Motion**

   Defendant Cameron, the Sheriff of Charlotte County, moves for summary judgment on Plaintiff's conditions of confinement claim, and states that the Complaint is unclear whether Plaintiff is attempting to state a claim against the Sheriff for failure to treat Plaintiff's dental issues and hernia.  With regard to the conditions of confinement claim, the Sheriff argues that Plaintiff does not have a constitutional right to a specific type of toothbrush.  Sheriff Motion at 2.  Moreover, security concerns at the jail prompted the implementation of the fingertip tooth brush, also known as the "no-shank" toothbrush.  In support of his Motion,

---

[3]The exhibits attached to the Complaint reveal that Plaintiff also lost a temporary filling while incarcerated and may have required a tooth extraction.  The Complaint, however, contains no facts concerning a loss of a temporary filling and a tooth extraction.  See generally Complaint.  Nevertheless, PHS' exhibits reveal that both of these dental conditions have been treated.  See Doc. #1-1 at 1-2.

the Sheriff submits the Affidavit of Major Thomas Rodger (Shrf. Exh. A); a photograph of a "no-shank toothbrush" (Shrf. Exh. A1), an advertisement for "thumb" and "no-shank toothbrushes" (Shrf. Exh. A2); and copies of relevant medical assessments (Shrf. Exh. B-C).

### c. Defendant PHS' Motion

Defendant PHS also moves for summary judgment. With respect to the alleged failure to provide medical treatment claims, PHS provides a detailed account of Plaintiff's requests for medical treatment, the number of times Plaintiff was seen by the Medical Department and specialists, and the treatment provided to Plaintiff during those appointments. See generally PHS Motion. PHS argues that Plaintiff's hernia was evaluated by the doctor and the doctor diagnosed him with an inguinal hernia, which does not require surgery. Id. at 7 (citing Aff. Kennedy, M.D.). Instead, Plaintiff was provided with a hernia belt. Id. With regard to Plaintiff's dental issues, PHS submits that Plaintiff entered the county jail with chronic and long-standing periodontal disease evidencing a life time of lack of care for his teeth and thirty-six years of smoking cigarettes.[4] Nevertheless, PHS provides a detailed chronology of Plaintiff's visits for dental care and treatment. Id. at 10-11. In support of its Motion, PHS attaches the following

[4]Upon intake at the county jail, Plaintiff was diagnosed with advanced periodontal disease, gum disease with receding gyms, irritation and bone loss. PHS Motion at 9.

-3-

exhibits (Doc. #35): affidavit of Scott Kennedy, M.D. and copies of pertinent parts of Plaintiff's medical record (PHS Exh. A), and affidavit of Stanley S. Levsky (PHS Exh. B).

### d. Plaintiff's Response

Plaintiff states in his Response that he "enclos[es] numerous request and grievance forms." See Response.   The Response only consists of one page and is unsigned.   Id.   The Clerk did not receive any grievances or request forms attached to Plaintiff's Response, despite the Court's warnings to Plaintiff regarding a Fed. R. Civ. P. 56 Motion.   See Docs. #10, #38.   Plaintiff, however, does attach numerous inmate request forms and grievances to his Complaint.   See Complaint.

Additionally, to the extent Plaintiff requests the appointment of counsel in his Response, the Motion is denied.   "A civil litigant, including a prisoner pursuing a § 1983 action, has no absolute constitutional right to the appointment of counsel.   The appointment of counsel is instead a privilege that is justified only by exceptional circumstances."   Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987)(citations omitted).   Although there is no comprehensive definition for what constitutes "exceptional circumstances," the Court should consider the following factors: (1) the type and complexity of the case; (2) the abilities of the individual bringing it; (3) whether the individual is in the position to adequately investigate his case; and (4) whether the

evidence will consist mostly of conflicting testimony so as to require skill in cross-examination. Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982) (citations omitted). "The key is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the [C]ourt. Where the facts and issues are simple, he or she usually will not need such help." Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993). Upon review of the record in this matter, the Court denies Plaintiff's motion and finds that the case is not complex. See Complaint. Plaintiff has shown the ability to litigate his case.

## II. Applicable Law

### A. Summary Judgment Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Coward, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment,"

Chapman v. Al Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Electronics North America, Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). In doing so, the Court "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail a the summary judgment stage." Beard v. Banks, 548 U.S. 521, 529-30 (2006). Also, "[a] court need not permit a case to go to a jury, however, when the inferences that are drawn from the

-6-

evidence, and upon which the non-movant relies, are 'implausible.'"
Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th
Cir. 2002) (citations omitted). Nor are conclusory allegations
based on subjective beliefs sufficient to create a genuine issue of
material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217
(11th Cir. 2000). "When opposing parties tell two different
stories, one of which is blatantly contradicted by the record, so
that no reasonable jury could believe it, a court should not adopt
that version of the facts for purposes of ruling on a motion for
summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In
the summary judgment context, however, the Court must construe *pro
se* pleadings more liberally than those of a party represented by an
attorney. Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

## B. Conditions of Confinement Law

Plaintiff claims violations of the Eighth Amendment[5] with
respect to the conditions of his confinement, specifically
provision of the no-shank toothbrush, instead of a full size
toothbrush. See Complaint. The "cruel and unusual punishment"
standard, which originally proscribed barbarous methods of
punishment, has evolved to reflect society's "standards of

---

[5]Plaintiff's rights as a pretrial detainee arise from the
Fourteenth Amendment, though the case law developed with regard to
the Eighth Amendment prohibitions against cruel and unusual
punishment is analogous. Cook ex. rel Estate of Tessier v Sheriff
of Monroe County Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). See
also Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985).

decency." Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981), Estelle v. Gamble, 429 U.S. 97, 102 (1976). The court employs a two-part analysis in determining whether the conditions of a plaintiff's confinement violates the Eighth Amendment. Hudson v. McMillan, 503 U.S. 1, 8 (1992). First, the condition must be objectively and sufficiently serious or "extreme" to show that it "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). Second, plaintiff must come forward with some factual allegations to show that the defendant official "acted with a sufficiently culpable state of mind." Id. (citing Hudson, 503 U.S. at 8. Negligence is not enough. Chandler, 379 F.3d at 1289. Rather, a plaintiff must show the defendant acted with "deliberate difference." Id. Significantly, a defendant must (1) have subjective knowledge of a risk of harm; (2) disregard that risk; and (3) engage in conduct that rises above mere negligence.

## C. Medical Deliberate Indifference Law

To survive Defendants' Motion for Summary Judgment on his claims of deliberate indifference, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). To show that Defendant PHS was

-8-

deliberately indifferent to his medical needs under the second prong of the Goebert test, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. at 1326. A complete denial of readily available treatment for a serious medical condition obviously constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).

Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. See Id. at 393-94; Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir.1990). A plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Pet. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n. 12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730 (2002) . . . the Supreme Court

criticized part of the qualified immunity analysis in <u>Hill</u>, but not <u>Hill's</u> analysis of what constitutes a serious medical need of prisoners.").

The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care, as well as by a decision to take an easier but less efficacious course of treatment. <u>See</u> <u>Steele v. Shah</u>, 87 F.3d 1266, 1269-70 (11th Cir. 1996); <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989). Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." <u>Mandel v. Doe</u>, 888 F.2d 783, 789 (11th Cir. 1989); <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 704 (11th Cir. 1985). However, a mere difference of opinion with medical staff about the proper course of treatment does not support an Eighth Amendment claim. <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991). With these precedents in mind, the Court turns to the Defendants' Motions.

## III. Findings of Undisputed Facts and Conclusions of Law

In September 2009, the administration of the Charlotte County Sheriff's Office began providing inmates with no-shank toothbrushes after considering security concerns posed by inmates converting the long handled toothbrushes into shanks, tattooing devices, or other weapons. Shrf. Exh. A. Plaintiff entered the Charlotte County Jail in November 2009 and received a welcome packet including,

*inter alia*, a no-shank toothbrush and toothpaste. See generally Complaint; Shrf. Exh. A. Plaintiff was permitted to replace his no-shank toothbrush weekly, and also was given the opportunity to purchase a thumb toothbrush from the commissary starting in February 2011. Shrf. Exh. A. PHS had nothing to do with the toothbrush policy.

In November 2009 upon intake at the jail, Plaintiff underwent medical intake screening. Plaintiff entered the Charlotte County Jail with pre-existing dental conditions, including periodontal disease and gum abscess, which were a result of his long-standing lack of dental care and hygiene, coupled with cigarette smoking for thirty plus years. Shrf. Exhs. B-C; see also PHS Exh., Aff. Levsky. In December 2009, Plaintiff reported decaying teeth and was referred to a dentist. During the December 2009 appointment, Plaintiff also complained of other medical ailments, including a hernia, and was provided a pain prescription and a low bunk pass for his ailments. Approximately one month later, in January 2010, Plaintiff saw the dentist and a dental x-ray was performed showing significant bone loss, receding gums, mandibular anterior lower teeth, and advanced periodontal disease. The medical records show that Plaintiff continued to see the dentist periodically.

With respect to the hernia, the medical records reveal that in December 2009 Plaintiff first mentioned the hernia, but did not file any inmate requests or grievances regarding his hernia until

March 2010. See Aff. Kennedy, M.D. Plaintiff again remained quiet about his hernia until June 2010. Id. On June 24, 2010, Plaintiff saw an L.P.N. in the Medical Department regarding his hernia and the L.P.N. referred Plaintiff to the R.N. Id. In mid August 2010, the R.N. noted that Plaintiff had a right inguinal hernia and placed Plaintiff on the call list to see the doctor. Id. Two days later, in August 2010, the doctor evaluated Plaintiff's hernia condition and found Plaintiff complained of an ache, but no pain; was in no acute distress; exhibited no pain when walking; his abdomen was soft and tender; there were no masses or pathology present; and he had no adenopothy. Id. Based on the evaluation, the doctor diagnosed Plaintiff with an inguinal hernia non-strangulation, which did not require surgery. Id. Instead Plaintiff was provided with a hernia belt. Id. Plaintiff was told to report any increased pain or changes to the Medical Department. Id.

Approximately 8 months went by with no complaints from Plaintiff about his hernia. Id. In April 2011, Plaintiff submitted a grievance about his hernia, so Plaintiff's hernia was evaluated and found "palpable and reducible," presenting no "emergent problems." Id. Plaintiff continued to use the prescribed hernia belt. Id. In May 2011, Plaintiff was provided a second hernia belt because his first one was taken away from him

while in confinement. Id. The instant record shows that Plaintiff has not had surgery for his hernia.

Plaintiff's preference for a certain type of toothbrush does not run afoul of the Eighth Amendment. Plaintiff acknowledges that he is provided with a toothbrush, and the record shows he can change this toothbrush weekly. Although Plaintiff blames Defendant Cameron for providing only no-shank toothbrushes and claims the no-shank toothbrushes caused severe plaque build-up, receding gums, and bleeding, the record before the Court conclusively shows that Plaintiff had all of these dental issues upon entering the Charlotte County Jail. Moreover, the Court neither finds the provision of no-shank toothbrushes offensive, nor does it find that objectively these conditions are "extreme" to have posed an "unreasonable risk of serious damage" to Plaintiff's health· or safety. Chandler, 379 F.3d at 1290 (citations omitted)(pointing out that Eighth Amendment violations should not be found upon a judge's subjective views). Security concerns justified adoption of the no-shank toothbrushes and the record shows that the no-shank toothbrushes adequately addressed Plaintiff's gum issues. Based on the foregoing, Defendant Cameron is entitled to summary judgment on Plaintiff's conditions of confinement claim.

Likewise, the medical treatment provided for Plaintiff's dental conditions and hernia does not violate the Eighth

Amendment.[6] Initially, the Court notes the Medical Department saw Plaintiff from 2010 to 2012 at least 19 times. With respect to Plaintiff's dental condition, Plaintiff has not directed the Court to any admissible evidence from which a reasonable finder of fact could conclude that Plaintiff's gum recession, plaque, and bleeding gums constitute objectively serious medical conditions. The Court does not independently find these conditions constitute a serious medical need. See Saunders v. Smith, Case No. 3:09-cv-815-HEH, 2012 WL 2576322 *6 (E.D. Va. July 3, 2012)(finding gum disease did not constitute a serious medical condition). Nevertheless, even if Plaintiff's gum disease did constitute a serious medical need, the record conclusively shows that PHS provided timely care and treatment for Plaintiff's dental concerns.

With respect to Plaintiff's hernia, the record shows that the PHS doctor, Scott Kennedy, diagnosed Plaintiff with an inguinal hernia, non-strangulation. Plaintiff was told that the hernia could "stay like this for years." The record shows Plaintiff's hernia does not require surgery. The Court will, nevertheless, assume *arguendo* that Plaintiff's hernia constitutes a serious

---

[6]The record reveals no causal connection between Defendant Cameron and the medical care provided to Plaintiff for his gums and his hernia. Plaintiff only alleges in the Complaint that "the Sheriff is in charge of this facility and the proper order of its running." As discussed above, there is no *respondeat superior* liability under § 1983.

medical need and will turn to address whether Defendant PHS acted with deliberate indifference to Plaintiff's medical condition.

The record reveals that PHS staff promptly evaluated Plaintiff's condition, diagnosed Plaintiff with a non-strangulated, right inguinal hernia, and determined the proper course of treatment was a hernia belt. Plaintiff also was provided with pain medication and Tylenol.[7] PHS staff told Plaintiff to return to the Medical Department if his condition changed or worsened. The record reveals that anytime Plaintiff complained about his hernia, the Medical Department promptly saw Plaintiff. Plaintiff submits that he requires surgery on his hernia, but has produced no evidence to support his claim. Moreover, that Plaintiff believes he should have surgery on his hernia is insufficient to support a deliberate indifference claim. Palazon v. Sec'y Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010)(quoting Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)(whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); Harris, 941 F.2d at 1505 (a difference of medical opinion between the prison's medical staff and the inmate about the latter's course of treatment will not support a claim of cruel and unusual

---

[7]Albeit, the pain medication was provided for one of Plaintiff's other medical conditions not at issue in this action.

punishment).  The care Plaintiff received was adequate and  not "so grossly incompetent, inadequate, or excessive as to shock the conscience  or  to  be  intolerable  to  fundamental  fairness." Therefore, Defendant PHS' Motion for Summary Judgment is granted.

ACCORDINGLY, it is hereby

**ORDERED**:

1.  Plaintiff's motion to appoint counsel (Doc. #43) contained within his Response is **DENIED**.

2.  The Motion for Summary Judgment (Doc. #37) filed on behalf of Defendant Cameron is **GRANTED**.

3.   The Motion  for  Summary  Judgment  filed  on  behalf  of Defendant PHS (Doc. #36) is **GRANTED**.

4.  The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Orlando, Florida, on this _____ day of August, 2012.

_____
G.  KENDALL  SHARP
SENIOR UNITED STATES DISTRICT  JUDGE

SA: alj
Copies: All Parties of Record

-16-